UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:21CR213(SALM) |
| v. | : | |
| MATTHEW V. BLACKWELL | : | March 17, 2022 |

### GOVERNMENT'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in response to the sentencing memorandum of Defendant Matthew V. Blackwell [doc. 25] for his sentencing scheduled on March 28, 2022, at 1:30 p.m.   On December 9, 2021, he waived indictment and pleaded guilty to evading $285,361 in federal income taxes based on $927,143 of unreported income accumulated over five consecutive years.   The Presentence Report ("PSR") has determined that his Sentencing Guideline range is 30 to 37 months of imprisonment, with a fine range of $10,000 to $570,722, and a period of supervised release of one to three years.   PSR ¶¶ 79, 82, 87.   As noted in his plea agreement [doc. 8 at 2], Mr. Blackwell fully paid the tax restitution of $285,361, exclusive of applicable civil penalties and interest, on November 5, 2021.

Mr. Blackwell has asked the Court to impose a below-Guidelines sentence of incarceration based on his rehabilitation from substance abuse and the impact on his family.   While recognizing Mr. Blackwell's commendable recovery from his serious drug addiction and his genuine love for his family, the government respectfully submits that a sentence within the Guideline range would appropriately reflect his knowing evasion of income tax for five consecutive years on a large amount of fraudulently obtained income.   The evidence proves that, between 2012 and 2016, he embezzled nearly a million dollars from his mother's company by executing a false-invoicing

scheme in which he repeatedly deceived the company controller, deposited the illegitimate proceeds into a shell business checking account, and then transferred the funds into his personal accounts for his own use.

By June 2017, Mr. Blackwell became clean and sober and stopped using drugs, PSR ¶ 54, and Company A never pursued charges for the embezzlement.   Mr. Blackwell, however, did not take affirmative steps to declare the $927,143 in fraudulently obtained income—or to pay the additional tax owed—until the Internal Revenue Service's ("IRS") criminal investigation went overt in September 2020.   In essence, the record shows that he willfully evaded his income tax obligations and did not intend to claim the embezzlement funds as income.   Accordingly, the government respectfully submits that a custodial sentence within the 30-37-month Guideline range would constitute just punishment for his tax offense, achieve specific and general deterrence, and promote respect for the law.

I.    **The Offense and Relevant Conduct**

Mr. Blackwell was formerly the Vice President of Operations at a family-owned food company that packaged and sold dried fruits, nuts, and granola to grocery stores ("Company A"). His mother is Company A's founder and president.   From 2012 through 2016, he embezzled $927,143 from Company A.   For each year from 2012 through July 2017, he willfully filed tax returns that omitted the embezzled income.   During this period, Mr. Blackwell resided in either Woodbridge or Wolcott, Connecticut.   PSR ¶ 7.

As Vice President of Operations, Mr. Blackwell managed the account of one of Company A's main product suppliers ("Supplier A").   From 2012 through 2016, the defendant created false purchase orders and invoices using Supplier A's trade name (i.e., its "doing business as" name),

and presented approximately 33 false invoices to Company A's controller for payment.    Based on these invoices, Company A's controller issued payment checks to the defendant.    Supplier A had no contemporaneous knowledge of these false purchase orders and invoices.    PSR ¶ 8.

To execute this scheme, Mr. Blackwell opened a business checking account at JP Morgan Chase bank as "Matthew Blackwell dba [Supplier A's trade name]."    From 2012 through 2016, he deposited into this account the checks that Company A's controller had issued to pay for the false invoices.    He then transferred the money to his personal checking account to pay for his own expenses.    During this time, Company A's controller was unaware that the defendant was presenting false invoices for payment.    PSR ¶ 9.

For tax years 2014, 2015, and 2016, Mr. Blackwell filed income tax returns (Form 1040) prepared by his personal accountant.    However, he never informed his accountant about the fraudulently obtained checks from Company A or the deposits into his shell business account at JP Morgan Chase bank.    Nor did he provide his accountant with the bank statements for his business account or his personal account.    Rather, the sole income documents provided by the defendant to his accountant were Forms W-2 for him and his spouse as well as rental property information. Consequently, his filed tax returns did not include or reflect the nearly $1 million in embezzled income from Company A.    PSR ¶ 10.

The chart below lists the taxable income reported by Mr. Blackwell on his tax returns, the embezzled income from Company A not reported by him, and the additional income tax due:

| YEAR | Reported Taxable Income | Unreported Income (Embezzled Funds) | Additional Income Tax Due |
|---|---|---|---|
| 2012 | $54,444 | $56,589 | $13,546 |
| 2013 | $79,738 | $223,308 | $66,739 |
| 2014 | $98,655 | $184,229 | $56,835 |
| 2015 | $101,296 | $228,971 | $73,070 |
| 2016 | $88,993 | $234,046 | $75,171 |
| Total | $423,126 | $927,143 | $285,361 |

PSR ¶ 12.[1]

II.   **The Plea Agreement**

On December 9, 2021, Mr. Blackwell pleaded guilty to a single-count information charging him with tax evasion in violation of 26 U.S.C. § 7201 for tax year 2016.   On November 5, 2021, he had fully paid the tax restitution of $285,361; he also agreed to cooperate with the IRS to resolve civil penalties and interest.

Mirroring the plea agreement, the PSR has scored his base offense level under U.S.S.G. §§ 2T1.1(a)(1) and 2T4.1(G) as 18 based on a tax loss of $285,361.   PSR ¶ 17.   Two levels were added under section 2T1.1(b)(1) because the defendant failed to report or to correctly identify the source of income exceeding $10,000 from criminal activity.   PSR ¶ 18.   Two more levels were added because the offense involved sophisticated means under Section 2T1.1(b)(2) since Mr. Blackwell repeatedly fabricated fake invoices, deceived Company A's controller to issue checks to pay these phony invoices, used a shell business checking account to deposit these payment checks,

---

[1] Mr. Blackwell left Company A sometime in 2016.   In 2017, due to a product recall from Supplier A, Company A began comparing shipments to purchase orders and noticed multiple discrepancies. Company A's president/owner confronted Mr. Blackwell, who admitted to committing the fraudulent scheme.   Mr. Blackwell was directed to confess his actions to certain Company A employees.   Those employees were directed not to disclose his conduct under threat of termination. *See* Government's Statement of Offense and Relevant Conduct to U.S. Probation Office dated January 31, 2022.

and then transferred money from the shell account to his personal account.   PSR ¶ 19.   Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility resulting in a total offense level of 19.   PSR ¶¶ 25-26.   His Guideline range is 30 to 37 months of imprisonment, with a fine range of $10,000 to $570,722, and a period of supervised release of one to three years.   PSR ¶¶ 79, 82, 87.

## III.   Discussion

### A.   Legal Standard and 18 U.S.C. § 3553(a)

Although the Sentencing Guidelines are no longer mandatory, they must be considered by the Court along with the other factors listed in 18 U.S.C. § 3553(a).   *United States v. Booker*, 543 U.S. 220, 260-61 (2005); *United States v. Caracappa*, 614 F.3d 30, 44 (2d Cir. 2010).   Ultimately, a district court's sentence is reviewed for reasonableness.   *Booker*, 543 U.S. at 260-61. Reasonableness is a flexible concept, and district courts are given latitude in their exercise of discretion to fashion an appropriate sentence, even a non-Guidelines sentence.   *See Caracappa*, 614 F.3d at 44.   The Second Circuit Court of Appeals ("Second Circuit") has recognized that "[i]n calibrating [its] review for reasonableness, [it] will continue to seek guidance from the considered judgment of the Sentencing Commission as expressed in the Sentencing Guidelines and authorized by Congress."   *United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006).

Title 18, United States Code, Section 3553(a) provides, in pertinent part:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

> ***

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and

(7) the need to provide restitution to any victims of the offense.

**B.   A Sentence of Imprisonment Within the Guideline Range Would Constitute a Just Sentence Due to the Defendant's Knowing Evasion of Taxes Derived From Embezzled Income Over Five Separate Years**

The defendant's offense conduct, when considered through the prism of the § 3553(a) factors, supports a sentence of imprisonment consistent within the precatory 30-37-month Guideline range.

**1.   The Nature and Circumstances of the Offense**

For a five-year period, Mr. Blackwell committed two criminal offenses: He stole nearly a million dollars from Company A, and then failed for five consecutive years to report this income and to pay the federal income tax due and owing.   His embezzlement of $927,143 from his mother's company was studied, sustained, and deliberate.   From 2012 through 2016, he repeatedly duped the company controller into paying 33 false invoices, which intentionally referenced the trade name of one of Company A's major suppliers that he personally managed.

-6-

Mr. Blackwell then deposited the illegitimate proceeds into his shell business account and transferred the money to his personal bank accounts.   When filing his income taxes for each of the five years, he knowingly evaded income tax by excluding the ill-gotten gains as taxable income on his returns.   He withheld the relevant banking records from his accountant and made no mention of the fraudulent payment checks from Company A or the deposits into the shell business account.   Consequently, Mr. Blackwell's filed tax returns did not include or reflect the nearly $1 million in embezzled income.   PSR ¶ 10.

In doing so, Mr. Blackwell stole money from the public treasury and kept those funds for his own benefit.   While he was suffering from a serious addiction and spending some of the money on drugs, the PSR states that he stopped taking all illicit drugs by June 2017.   PSR ¶ 54. But even after becoming sober, Mr. Blackwell never elected to file amended income tax returns or to disclose the additional income—when he certainly could have done so.   Rather, he chose to stay silent about the embezzled funds to avoid paying additional tax to the IRS.

In sum, Mr. Blackwell's offense and relevant conduct is the product of his conscious decisions and actions between 2012 and September 2020.   While the government acknowledges his struggle with drug addiction, the record corroborates that he committed tax evasion for the same basic reason that most defendants do: He wanted to keep more money for himself, and he believed he would not get caught.

### 2.   The Defendant's History and Characteristics

Mr. Blackwell has no prior criminal history and has the support of loving family members. He has expressed a sincere desire to take care of his family and children.    To his credit, he has overcome his addiction and is currently moving forward with his life.

On the other hand, the record illustrates that his decision to evade his tax obligations was not driven by financial desperation or the lack of economic opportunity.    Mr. Blackwell is an intelligent college graduate, possesses marketable skills, and has submitted a personal financial statement that reflects a comfortable standard of living which the typical federal criminal defendant would envy.    Most of his recent employment records show him making a six-figure salary.    PSR ¶ 73.    He owns two residential properties and enjoys sizeable balances in his retirement and financial accounts.    PSR ¶ 75.    These facts strongly suggest that his criminal conduct was motivated by avarice, at least in part, and he made the conscious decision not to pay his fair share of taxes for five continuous years.

### 3.   The Sentence Must Promote General Deterrence and Respect for the Law

The Court's sentence must promote respect for the law and demonstrate to the general public that the criminal justice system will treat tax crimes seriously.    Section 3553(a) states that the Court must consider the need for the sentence to "afford adequate deterrence to criminal conduct."    18 U.S.C. § 3553(a)(2)(B).

Tax crimes are serious, costly, and damaging to our nation's system of taxation.    *See United States v. Ture*, 450 F.3d 352, 357 (8th Cir. 2006) (finding "[t]he criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system."). The criminal tax laws protect the public interest by preserving the integrity of the nation's tax

system that funds the treasury for expenditures such as public safety, infrastructure, and public education.   Criminal tax prosecutions, such as the instant case, serve to punish the violator appropriately and to promote respect for the tax laws among the public.   In the words of the Sentencing Commission, "[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines.   Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators."   U.S.S.G. Ch. 2, Pt. T, introductory cmt.

In this vein, the Second Circuit has held that "general deterrence occupies an especially important role in criminal tax offenses, as criminal tax prosecutions are relatively rare."   *United States v. Park*, 758 F.3d 193, 201 (2d Cir. 2014).   In *Park*, the defendant diverted his business's cash receipts, filed false corporate tax returns that significantly underreported the business's gross receipts, and underpaid payroll taxes.   The tax loss was $133,601, the defendant had prior fraud convictions, and the Guideline range was 15 to 21 months of imprisonment.   *Id.* at 195-96.   The Second Circuit vacated a probationary sentence based on district court's belief that the government could not afford the cost of incarceration during a so-called "government shut-down."   *Id.* at 202. The Second Circuit reaffirmed that as "the Guidelines themselves state, '[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines.'"   *Id.* at 201 (quoting U.S.S.G. Ch. 2, Pt. T, introductory cmt.); s*ee also United States v. Taylor*, 499 F.3d 94, 102 (1st Cir. 2007) (vacating sentencing of probation with one year in a halfway house for tax fraud offense where tax loss was $129,879 finding that "[w]hile tax fraud is

not violent in nature, at its heart, it is theft, specifically theft of money to which the public is entitled").

In light of the above discussion, the government respectfully submits that a custodial sentence within the 30-37-month Guideline range would communicate to the public that tax evasion is a serious crime that carries real consequences.   Mr. Blackwell enjoyed a level of financial comfort and did not have to resort to tax evasion.   Nevertheless, from 2012 to September 2020, he chose to do exactly that and shirk his responsibility to pay his fair share.   Our national system of self-reported tax liability relies on responsible citizens knowing that they have a legal obligation to report their income truthfully and to pay their taxes forthrightly.   Those individuals who violate this legal duty must face a serious consequence to deter others from following in their footsteps.

## **CONCLUSION**

In sum, the government respectfully requests that the Court impose a sentence within the Guideline range of 30-37 months of imprisonment.

Respectfully submitted,

LEONARD C BOYLE
UNITED STATES ATTORNEY

/s/
HAROLD H. CHEN
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT24432
1000 LAFAYETTE BLVD., 10th FLOOR
BRIDGEPORT, CONNECTICUT 06604
(203) 696-3000

-10-

## CERTIFICATE OF SERVICE

This is to certify that on March 17, 2022, a copy of foregoing Government's Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing.   Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ _____

HAROLD H. CHEN
ASSISTANT UNITED STATES ATTORNEY